UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>v.<br><br>OSCAR OSBALDO ORTIZ-MARTINEZ<br><br>                         Defendant. | Case Nos.: 10-cr-03986-BTM<br>               16-cv-01635-BTM<br><br>**ORDER DENYING DEFENDANT'S § 2255 MOTION**<br><br>**ECF NO. 271** |

Oscar Osbaldo Ortiz-Martinez ("Defendant") has filed a motion to vacate, set aside, or reduce his sentence pursuant to 28 U.S.C. § 2255 based on claims of ineffective assistance of counsel and prosecutorial misconduct. (ECF No. 271). For the reasons discussed below, the Court denies Defendant's § 2255 motion.

I. **BACKGROUND**

On September 12, 2012, Defendant was convicted on two counts: **(1)** conspiracy to import controlled substances, in violation of 21 U.S.C. §§ 952, 960, and 963, and **(2)** bribery, in violation of 18 U.S.C. § 201(b)(2)(c). (ECF No. 175). On November 2, 2012, the Court denied Defendant's motion for a new trial. (ECF No. 192). On July 3, 2013, the Court sentenced Defendant to 144 months in custody. (ECF No. 212). On April 5, 2015, the Ninth Circuit affirmed Defendant's

conviction, rejecting Defendant's argument that his conviction should be reversed based on the jury voir dire that preceded his trial. (ECF No. 265).

Defendant filed the instant § 2255 motion on June 24, 2016, claiming ineffective assistance of counsel and prosecutorial misconduct. (ECF No. 271). Defendant's ineffective assistance of counsel claim is based on allegations that his counsel failed to conduct sufficient witness interviews during the pre-trial investigation and failed to make certain objections during trial and sentencing. *Id.* Defendant's prosecutorial misconduct claim is based on allegations that the prosecutors offered perjured testimony, coached and guided witnesses, and made false statements and improper arguments during trial. *Id.*

## II. **DISCUSSION**

28 U.S.C. § 2255 provides that a prisoner in custody "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

### A. <u>Ineffective Assistance of Counsel Claim</u>

"The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising the claim on collateral review." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350–51 (2006). Defendant did not raise any ineffective assistance of counsel claims on direct appeal. (ECF No. 265). However, "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003).

A claim for ineffective assistance of counsel must establish that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, a defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."

*Id.* at 690. "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Defendant's instant ineffective assistance of counsel claim is based on allegations that his counsel failed to do the following: (i) object to prosecutors presenting perjured testimony, (ii) impeach witnesses who offered perjured testimony, (iii) object to a prosecutor's statement about a September 23, 2010 transcript, (iv) object to the accuracy of a transcript of an October 16, 2009 audio recording, (v) obtain a transcript of the grand jury testimony, (vi) interview a witness, (vii) subpoena and interview witnesses who could have provided rebuttal testimony, and (viii) bring up inaccuracies in the pre-sentence report and present mitigating evidence during the penalty phase. (ECF No. 271). The Court addresses each in turn.

      i.    <u>Failure to object to prosecutors presenting perjured testimony</u>

Defendant alleges that the following testimony was perjured because it was inconsistent with testimony from other witnesses or contradicted by other evidence: (a) Victor Silva's testimony about who initiated the idea to smuggle drugs, (b) Victor Silva's testimony about a backyard planning meeting a few weeks before October 6, 2009, (c) Vicente Murillo's testimony about when he first met Defendant, (d) Agent Perez's testimony about the October 16, 2009 meeting at

Autozone, (e) Agent Curiel's testimony regarding the $2000 bribe money he gave to Defendant on October 9, 2009, (f) Agent Figueroa's testimony about the June 3, 2010 border crossing, (g) Agent Figueroa's testimony about the June 4, 2010 bribe money of $20,000, (h) Vicente Murillo's testimony about what he did after giving Defendant the $20,000 on June 4, 2010, and (i) Agent Michael Harvey's Report of Investigation from the September 21, 2010 Port of Entry crossing.

### a. Victor Silva's testimony about who initiated the idea to smuggle drugs

Silva testified on direct examination that he was the one who informed Murillo that he knew people who were willing to drive drugs across the border. (ECF No. 249 at 50). Defendant alleges Silva's testimony is contradicted by the Memorandum of Activity for the Safety Valve Interview of Victor Silva on March 23, 2011, in which Agent Figueroa wrote that Silva claimed that Murillo was the one who approached him about the smuggling idea. (ECF No. 271 at 15-16). The Court finds that Silva's testimony was inconsistent with his prior statements in Agent Figueroa's report regarding who initiated the smuggling plan.

### b. Victor Silva's testimony about a backyard planning meeting a few weeks before October 6, 2009

Silva testified on direct examination that one to two weeks before October 6, 2009, he and Defendant met in the backyard of Silva's father's house to talk about when and how to let cars through Defendant's lanes. Silva stated that he was with his cousin Julio Martinez and another individual named William Green. Silva explained that when Defendant showed up at the house, Defendant briefly greeted Martinez and Green before Defendant and Silva went to the backyard to discuss the plan alone. (ECF No. 249 at 62-64). Defendant claims that this meeting was falsified because his own investigators interviewed Martinez and Green and they both said they had never seen Defendant in their lives. (ECF No. 271 at 5). However, Defendant provides no declarations or affidavits supporting these

statements. Therefore, Defendant has not sufficiently identified any inconsistencies.

          c. <u>Vicente Murillo's testimony about when he first met Defendant</u>

Murillo testified on direct examination that he first met Defendant on October 9, 2009 at an Autozone parking lot. (ECF No. 247 at 73). Defendant claims this is contradicted by Silva's subsequent testimony on direct examination, where Silva stated that in the late summer of 2009, he was with Murillo at a Circle K in Calexico when they happened to spot Defendant. Silva said he pulled Defendant aside because he did not want Defendant to see Murillo at that moment. (ECF No. 249 at 55-56). The Court does not find Murillo and Silva's testimony to be contradictory. Defendant's claim of inconsistency rests on Defendant equating Murillo "seeing" Defendant to Murillo "meeting" him.

          d. <u>Agent Perez's testimony about the October 16, 2009 meeting at Autozone</u>

Agent Perez testified on direct examination that on October 16, 2009, in the Autozone parking lot, he saw Murillo exit his vehicle and approach Silva and Defendant. (ECF No. 246 at 60, 78). Defendant claims that this testimony is contradicted by testimony from both Murillo and Silva. Murillo testified on cross-examination that during the Autozone parking lot meeting, he was always in his car and that Silva and Defendant approached him. (ECF No. 248 at 22). Silva testified on cross-examination that Murillo was in his truck when Silva and Defendant approached him. (ECF No. 249 at 75). The Court finds there are inconsistencies between Agent Perez's testimony and Silva and Murillo's testimony regarding whether Murillo exited his vehicle.

          e. <u>Agent Curiel's testimony regarding the $2000 bribe money he gave to Defendant on October 9, 2009</u>

Agent Curiel testified on direct examination that: (1) $1000 came from the Office of Professional Responsibility ("OPR") and another $1000 came from the

Office of the Inspector General ("OIG") and was given to him by Agent Angie Cuevas (ECF No. 246 at 81); (2) when he received the money he did not put it into an envelope and instead folded it and put it in his pants pocket (ECF No. 247 at 40); (3) when he approached Defendant with the bribe money, Defendant was wearing a blue shirt (ECF No. 247 at 28); and (4) he placed the money on the passenger seat of Defendant's car (ECF No. 247 at 29).

Defendant claims this testimony is contradicted by: (1) Agent Perez's testimony on cross-examination that the OIG money came from Agent Figueroa (ECF No. 247 at 40); (2) Murillo's testimony on direct examination that when Agent Curiel approached Defendant, the money was in an envelope (ECF No. 247 at 81-82; ECF No. 248 at 27); (3) Silva's testimony on direct examination that he thought Defendant was wearing a red or white shirt but did not remember (ECF No. 249 at 90); and (4) Agent Perez's investigative report that states that Agent Curiel "handed" Defendant the money (ECF No. 271 at 11).

The Court does not find Agent Curiel's testimony to be inconsistent with Silva's testimony about Defendant's shirt color as Silva states that he does not remember. The Court finds that Agent Curiel's testimony is inconsistent with Agents Perez and Murillo's testimony regarding who gave him the OIG money, whether the money was in an envelope, and whether the money was placed in Defendant's hand or on his car seat.

    f. <u>Agent Figueroa's testimony about the June 3, 2010 border crossing</u>

Agent Figueroa testified on direct examination that after Murillo crossed the port of entry, she and Agent Harvey met Murillo at an Applebee's parking lot, took the recording devices and searched the vehicle and Murillo. (ECF No. 250 at 7). Defendant claims this testimony is contradicted by Murillo's testimony on cross-examination, where he was asked "Did you drive straight to their office or did you meet" and he replied "yes." (ECF No. 248 at 40). Defendant also points to the

Report of Investigation Continuation by Michael William Harvey where he wrote that Murillo "drove through the Calexico West POE and proceeded to the OPR/Calexico Office where [Murillo] and the Jeep Cherokee were inspected to ensure no narcotics were smuggled into the United States." (ECF No. 285, Exh. 19). The Court finds that there are inconsistencies between Agent Figueroa's testimony and Murillo's testimony and Agent Harvey's report as to whether Murillo and his vehicle were searched at an Applebee's parking lot or the OPR office.

    g. <u>Agent Figueroa's testimony about the June 4, 2010 bribe money of $20,000</u>

Agent Figueroa testified on cross-examination that she photocopied $10,000, which came from OIG. (ECF No. 250 at 32). She stated that the money was combined with another $10,000 from OPR and placed in a white paper bag. (ECF No. 250 at 8). Defendant claims this testimony is contradicted by testimony on direct examination from Agent Mungia, who said he photocopied an unknown amount of money at OPR, which was then placed in a small paper bag. (ECF No. 248 at 67). Defendant also points to testimony from Murillo on direct examination and cross-examination, who said that the bag he received from Agent Harvey was brown. (ECF No. 247 at 127; ECF No. 248 at 41). The Court finds no inconsistency between Agent Figueroa and Agent Mungia's testimony. However the Court finds that there is an inconsistency between Agent Figueroa and Murillo's testimony regarding the color of the bag.

    h. <u>Vicente Murillo's testimony about what he did after giving Defendant the $20,000 on June 4, 2010</u>

Murillo testified on cross-examination that after he handed the bribe money to Defendant, Murillo drove to his own apartment. He stayed in his car at his apartment until he was notified that Defendant's car had gone somewhere else. He then met with the agents. He stated that he did not meet with Silva while he was at the apartment or after he met with the agents. (ECF No. 248 at 45-47).

Defendant claims that this testimony is contradicted by the Declaration of Special Agent Izabel Hallowell, who describes the audio recording from the device in Murillo's vehicle that day. Agent Hallowell describes the sound of the vehicle turning off, the car door opening and closing, and three minutes later, the car door opening and the vehicle turning on. Agent Hallowell also describes a ten minute conversation between Silva and Murillo. (ECF No. 285, Exh. 18). The Court finds that Murillo's testimony is inconsistent with Agent Hallowell's declaration regarding whether he exited his vehicle and met with Silva on June 4, 2010.

### i. Agent Michael Harvey's Report of Investigation from the September 21, 2010 Port of Entry crossing

Defendant alleges that Agent Harvey wrote a Report of Investigation that states that Defendant opened the back door of Murillo's vehicle and waved him through Inspection without scanning his documents. Defendant claims this report is contradicted by the video recording from September 21, 2010, which he alleges shows Defendant never opened any doors of Murillo's vehicle. (ECF No. 271 at 7). However, Agent Harvey never testified as a witness and his report was never entered into evidence. Therefore, the Court disregards this allegation.

The Court finds that all of the inconsistencies identified above are related to collateral matters: (i) whether Silva or Murillo first came up with the smuggling plan, (ii) whether Murillo exited his vehicle on October 16, 2009, (iii) whether Angie Cuevas or Agent Figueroa gave Agent Curiel the $1000 bribe money from OIG, (iv) whether the October 9, 2009 bribe money was in an envelope, (v) whether the October 9, 2009 bribe money was handed directly to Defendant or placed on the car seat, (vi) whether Murillo and his vehicle were searched at an Applebee's parking lot or the OPR office on June 3, 2010 (vii) whether a paper bag was white or brown, and (viii) whether Murillo exited his vehicle and met Silva after giving Defendant $20,000 on June 4, 2010.

Because Defendant has merely identified inconsistencies in testimony

related to collateral matters, he has not established that prosecutors presented perjured testimony. *See United States v. Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997) ("The fact that a witness may have made an earlier inconsistent statement, or that other witnesses have conflicting recollections of events, does not establish that the testimony offered at trial was false." Further, "perjured testimony [is] not cause for reversal if it was not directly related to the defendant's guilt or innocence"). Therefore, counsel's failure to object to testimony that contained collateral inconsistencies was within reasonable professional judgment and does not support a claim for ineffective assistance of counsel.

        ii.    <u>Failure to impeach witnesses who offered perjured testimony</u>

Defendant, without pointing to specific witnesses, alleges that his counsel failed to impeach witnesses with "evidence that contradicted and proved that they were lying at trial." (ECF No. 271 at 24). As detailed above, Defendant merely identifies collateral inconsistencies between witnesses' testimony and therefore, fails to establish that any witnesses gave perjured testimony.

Further, Defendant's counsel, in cross-examining Murillo and Silva, elicited testimony that placed their credibility at issue and supported the defense's alternative theories. In cross-examining Murillo, Defendant's counsel elicited testimony that suggested Murillo's bias toward the Government (*see* ECF No. 248 at 13, 31, 33, 53-54), undermined the credibility of some of the evidence (*see* ECF No. 248 at 10-12, 16-17, 20, 26-28, 42), and supported the defense's theory that the money Defendant received from Murillo was not a bribe (*see* ECF No. 248 at 31, 35, 38). In cross-examining Silva, Defendant's counsel elicited testimony that pointed out prior inconsistent statements made during his pre-trial meetings with the Government (*see* ECF No. 249 at 101-02, 104-05), suggested Silva's bias toward the Government (*see* ECF No. 142-43), and supported the defense's theory that Silva conspired with Murillo without Defendant's knowledge (*see* ECF No. 249 at 113-16, 119-21, 124-30, 132-24, 137). Therefore, this

allegation does not support a claim for ineffective assistance of counsel.

        iii.      <u>Failure to object to a prosecutor's statement about a September 23, 2010 transcript</u>

During deliberation, on September 12, 2012, the jury sent a note requesting to see the transcript from the September 23, 2010 recording. (ECF No. 183, Exh. 20). Outside the presence of the jury, the Court asked the parties to confirm which recording clips and transcripts were admitted into evidence. (ECF No. 251 at 3-11). When the Court asked about the September 23, 2010 clip, the prosecutor stated that "there are no clips in evidence from the 23rd." The Court then asked, "and there is no transcript?" and both the prosecutor and defense counsel agreed. (ECF No. 251 at 5-6). Defendant alleges his counsel wrongfully represented to the Court that the September 23, 2010 transcript did not exist, thereby denying the jury access to it. (ECF No. 271 at 21-22). However, Defendant's counsel correctly represented to the Court that the September 23, 2010 transcript was not admitted into evidence and therefore was properly withheld from the jury. Consequently, this allegation does not support a claim for ineffective assistance of counsel.

        iv.      <u>Failure to object to the accuracy of a transcript of an October 16, 2009 audio recording</u>

Defendant alleges that "some of the words that were transcribed from [the] October 16, 2009 audio recording [were] not right" but his counsel "did not challenge the issue." (ECF No. 271 at 10). Defendant does not allege where or how prevalent the inaccuracies are, nor how the inaccuracies materially change the content of the transcript. Therefore, this vague allegation does not support a claim for ineffective assistance of counsel.

//
//
//
//

### v. Failure to obtain a transcript of the grand jury testimony

Defendant alleges that his counsel "failed to obtain a transcript of testimony before the grand jury." (ECF No. 271 at 23). The "indispensable secrecy of grand jury proceedings must not be broken except where there is a compelling necessity. There are instances when that need will outweigh the countervailing policy. But they must be shown with particularity." *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682 (1958) (internal citation and quotations omitted). Examples of "cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly" include "the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like." *Id.* at 683. Defendant fails to allege any particularized need for grand jury transcripts. Therefore, this allegation does not support a claim for ineffective assistance of counsel.

### vi. Failure to interview a witness

Defendant alleges that his counsel failed to interview Murillo, the informant. (ECF No. 271 at 23). Defendant points to a March 11, 2011 hearing in which the Court informed defense counsel about access to Murillo:

> You are not entitled to take his deposition, but you are entitled to serve him with a subpoena in case the Government doesn't call him. You are entitled to interview him -- indeed, it would be ineffective assistance of counsel not to interview him so you want to do the right thing. Plus you want to do an investigation.

(ECF No. 222 at 33). The Government does not dispute that Defendant's counsel failed to interview Murillo. (*See* ECF No. 285 at 42-43). The Court finds that counsel's failure to interview Murillo constitutes deficient performance.

### vii. Failure to subpoena and interview witnesses who could have provided rebuttal testimony

Defendant alleges that his counsel failed to subpoena William Green and Julio Martinez, who, according to Silva, were at the backyard planning meeting

11

on October 6, 2009, and Agent Michael Harvey, the original case agent. (ECF No. 271 at 23). Regarding Green and Martinez, Defendant does not allege what these two witnesses would have testified to, nor does he present affidavits from them. Defendant's conclusory allegation that Green and Martinez's testimony would have rebutted Silva's testimony at trial is insufficient to support his ineffective assistance of counsel claim. *See Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) ("as to [counsel's] failure to interview or call an alleged alibi witness . . . [defendant] provides no evidence that this witness would have provided helpful testimony for the defense-i.e., [defendant] has not presented an affidavit from this alleged witness").

Regarding Agent Michael Harvey, Defendant alleges that he "wrote several false statements on the Reports and could have given exculpatory evidence." (ECF No. 271 at 23). However, Defendant does not identify the false statements nor the exculpatory evidence. Therefore, Defendant's similarly conclusory allegation is insufficient to support his ineffective assistance of counsel claim.

    viii. <u>Failure to bring up inaccuracies in the pre-sentence report and present mitigating evidence during the penalty phase</u>

Defendant alleges that his counsel failed to bring up inaccuracies in the pre-sentence report and "failed to investigate and present mitigating evidence during [the] penalty phase." (ECF No. 271 at 25). Defendant does not identify which facts his counsel should have objected to or what mitigating evidence he failed to present at sentencing.

Further, counsel did present mitigating evidence. (*See* ECF No. 257 at 48-54, 57-60). In addition, counsel successfully argued against applying the U.S.S.G. § 2D1.1(b)(5) two-level enhancement recommended by both the Government and U.S. Probation. (ECF No. 207 at 8-13; ECF No. 257 at 16-20). The resulting sentence of 144 months was lower than the Government's recommendation of 300 months and U.S. Probation's recommendation of 180

months. Therefore, this allegation does not support a claim for ineffective assistance of counsel.

### ix. Prejudice

Defendant's only allegation that supports a claim for ineffective assistance of counsel is the failure of his counsel to interview Murillo, the informant. However, Defendant fails to allege how this error prejudiced his defense. Even if he had, Defendant would not have been able to show that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different, given the overwhelming evidence at trial, including: **(1)** toll records showing numerous calls between Silva's phone and Defendant's phone, including 27 calls between September 5, 2009 through October 6, 2009, four calls occurring on October 5, 2009, and one call on October 6, 2009 that lasted over one hour (ECF No. 285-1, Exh. 12; ECF No. 249 at 161-64); **(2)** Silva's testimony, corroborated by audio recordings, that on October 6, 2009, he informed Murillo that Defendant provided the "green light" for them to smuggle drugs through Defendant's lane (ECF No. 285-1, Exh. 2; ECF No. 249 at 56-60); **(3)** the audio recording of the meeting with Defendant, Silva, and Murillo on October 9, 2009 where Murillo told Defendant that if Defendant needed anything, Defendant should tell Silva so Murillo could take care of it (ECF No. 285-1, Exh. 3; ECF No. 247 at 74-75); **(4)** the audio recording and undisputed testimony of the October 16, 2009 meeting when Agent Curiel placed $2000 in Defendant's car and asked, "Are we in it?" with Defendant responding, "sure" and instructing Agent Curiel to deal with Silva (ECF No. 285-1, Exh. 4; ECF No. 247 at 26-30); **(5)** the audio recording and testimony of the March 12, 2010 meeting with Defendant, Silva, and Murillo where they discussed code words that Defendant would use if the computer referred Murillo to secondary inspection (ECF No. 285-1, Exh. 5; ECF No. 247 at 86); **(6)** the audio recording and testimony of the April 14, 2010 meeting where Defendant and Murillo discussed more details about

smuggling drugs through Defendant's lane, including Defendant's work schedule, traffic at the port of entry, and the best time to smuggle drugs through the port (ECF No. 285-1, Exh. 6; ECF No. 247 at 87-89); **(7)** the audio recording and testimony of the May 25, 2010 meeting where Defendant and Murillo discussed which port they should use to cross the drugs, the code words in the event of a computer referral to secondary inspection, Defendant's instruction for Murillo to obtain a fake passport to use when Murillo crossed through Defendant's lane so they would not be tied to each other, and Defendant's agreement that he would not send Murillo to secondary inspection (ECF No. 285-1, Exh. 7; ECF No. 247 at 95-102); **(8)** the TECS records, testimony and audio and video recording of Murillo crossing through Defendant's lane on June 3, 2010 with Defendant instructing Murillo to meet him "At 4:00" (ECF No. 247 at 106-07); **(9)** the audio recording and testimony of the June 4, 2010 meeting where Defendant asked, "So it did get done" to which Murillo responded that he had Defendant's "twenty thousand smackers" or "dough" and that he crossed eight kilograms of cocaine (ECF No. 285-1, Exh. 8; ECF No. 247 at 108, 125-26); **(10)** the testimony, and video recording of Defendant carrying the bag of money after he met with Murillo on June 4, 2010 (ECF No. 248 at 73-75); **(11)** the audio recording and testimony of the June 19, 2010 meeting where Defendant and Murillo discussed smuggling drugs, including heroin, by using a motorcycle and Defendant stating that they could do it "every day" (ECF No. 285-1, Exh. 9; ECF No. 247 at 133-33); **(12)** the audio recording and testimony regarding the September 14, 2010 meeting where Defendant and Murillo discussed smuggling 15 kilograms of methamphetamine in exchange for $30,000, Defendant advising Murillo to cross on a weekday after 11:00 p.m., and Defendant trying to convince Murillo to cross methamphetamine on a motorcycle (ECF No. 285-1, Exh. 10; ECF No. 247 at 133-37); **(13)** the TECS records, audio and video recording, and testimony of Murillo's crossing through Defendant's lane on September 21, 2010 (a weekday) at 11:13 p.m.

where Defendant asked if this was a trap (ECF No. 285-1, Exh. 11; ECF No. 247 at 141); **(14)** the audio and video recording and testimony of the September 22, 2010 meeting where Defendant asked about the quantity of drugs smuggled on September 21, 2010 and Murillo stated 15 kilograms of methamphetamine and that Defendant would be paid on Thursday (ECF No. 285-1, Exh. 17; ECF No. 247 at 141-42); **(15)** the audio and video recording and testimony of the Thursday, September 23, 2010 meeting where Murillo provided $30,000 to Defendant (ECF No. 247 at 144; ECF No. 250 at 12-16); **(16)** Silva's testimony that Defendant apologized to Silva numerous times for not giving any of the money Defendant received from Murillo to Silva (ECF No. 249 at 93); and **(17)** Silva's testimony about Defendant's request that Silva provide untruthful statements regarding the $2000 bribe (ECF No. 249 at 94-95). As the Court noted during Defendant's sentencing hearing on July 3, 2010, "it's so clear out of his own mouth on the tape recordings about how he's involved." (ECF No. 257 at 69).

Because Defendant cannot establish prejudice, his § 2255 motion based on ineffective assistance of counsel is denied.

B. <u>Prosecutorial Misconduct Claim</u>

Defendant's prosecutorial misconduct claim is based on allegations that the prosecutors: (i) presented perjured testimony, (ii) made false statements about a September 23, 2010 transcript, (iii) coached and guided a witness during trial, and (iv) made an improper argument during closing. (ECF No. 271). Defendant did not raise his prosecutorial misconduct claim on direct appeal. (ECF No. 265). Therefore his claim is procedurally barred. *See Sanchez-Llamas*, 548 U.S. at 350–51 ("The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising the claim on collateral review."). Further, because the Court does not find that the Defendant received ineffective

assistance of counsel, Defendant cannot show cause and prejudice or actual innocence to excuse his procedural default. *See United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) ("A § 2255 movant procedurally defaults his claims by not raising them on direct appeal and not showing cause and prejudice or actual innocence in response to the default."). Nonetheless, the Court will address Defendant's prosecutorial misconduct claims. "Reversal on this basis is justified only if it appears more probable than not that prosecutorial misconduct materially affected the fairness of the trial." *United States v. Sayakhom*, 186 F.3d 928, 943 (9th Cir. 1999).

### i. Presenting perjured testimony

To prevail on a claim of prosecutorial misconduct by use of perjured testimony, a defendant must show that "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003). As discussed previously, Defendant merely identifies inconsistencies related to collateral matters and therefore, fails on the third prong. Consequently, this allegation does not support a claim for prosecutorial misconduct.

### ii. Making false statements about a September 23, 2010 transcript

As previously discussed, during the jury's deliberation on September 12, 2012, the prosecutor correctly informed the Court that the September 23, 2010 transcript was not admitted into evidence, and therefore, should not be given to the jury. (See ECF No. 251 at 5-6). Consequently, this allegation does not support a claim for prosecutorial misconduct.

### iii. Coaching and guiding a witness during trial

Defendant alleges that the prosecutor "was coaching Mr. Silva to testify at trial." (ECF No. 271 at 24). However, Defendant provides nothing beyond this conclusory statement. Therefore this allegation does not support a claim for

prosecutorial misconduct. *See United States v. Kahan & Lessin Co.*, 695 F.2d 1122, 1125 (9th Cir. 1982) ("[a]ppellants did not substantiate their assertions of witness threats or coaching").

                iv.      <u>Making an improper argument during closing</u>

Defendant alleges that the prosecutor made an improper argument in his closing by telling a story of how he was able to know his son had eaten cupcakes left on the kitchen counter and tried to hide the evidence, without actually seeing his son in the act. (ECF No. 271 at 24-25). Defendant's citation to *Walker v. Davis*, 840 F.2d 834, 838 (11th Cir. 1988) implies that he is contending that the prosecutor violated the advocate-witness rule. *See Sayakhom*, 186 F.3d at 943 ("The advocate-witness rule prohibits an attorney from appearing as both a witness and an advocate in the same litigation.").

During the defense's closing, counsel argued that the Government did not present evidence beyond a reasonable doubt because there was no video recording of Murillo handing the bag of money to Defendant inside of Murillo's car. (*See* ECF No. 250 at 202-03). In response, the prosecutor argued:

> And [defense counsel] also says that we haven't shown to you or proven to you that he received the money. Despite the fact that you heard testimony about the bag, the money being secured, money being put into the bag, the audio recording of Mr. Murillo giving the bag to the defendant, and then the video of the defendant getting out of Mr. Murillo's car with the bag, the defense says it's not enough.
>
> And, ladies and gentlemen, it reminds me of - - it reminds me of my son actually. A couple of years ago my wife and I had fallen asleep on a Sunday afternoon in our living room. We had left some cupcakes on the counter . . . My son was four-years-old or so, and he had not fallen asleep. When we got up Sunday afternoon, we went into the kitchen and found that someone had tampered with those cupcakes, and they had tried to hide it by fixing parts that had been eaten.
>
> Now, ladies and gentlemen, nobody, neither my wife nor I, saw my son eat those cupcakes. But we knew that he did it because no one else

> did.
>
> Ladies and gentlemen, that situation isn't too dissimilar from here except that in this case we have an audio recording of the defendant doing it.
>
> It's as though the defense would require my son to be announcing, "I'm about to eat the cupcakes, mom and dad," before he actually does it, before that will be enough evidence.

(ECF No. 250 at 214-15). The prosecutor was not testifying as a witness in this instance. The prosecutor used a non-prejudicial and non-inflammatory personal anecdote for an analogy to respond to defense counsel's argument that video evidence was required to prove Defendant's guilt beyond a reasonable doubt. This was proper. *See United States v. Marcucci*, 299 F.3d 1156, 1166 (9th Cir. 2002) (prosecutor's argument was proper because it was an "invited reply" to the defense's argument). Therefore, this allegation does not support a claim for prosecutorial misconduct.

### v. Material effect on the fairness of the trial

Defendant has not identified conduct that would constitute prosecutorial misconduct. Even assuming that Defendant had, he would not be able to establish that it was "more probable than not that [the alleged] prosecutorial misconduct materially affected the fairness of the trial," given the previously discussed overwhelming amount of evidence of his guilt at trial. *See Sayakhom*, 186 F.3d at 943.

Therefore, Defendant's § 2255 motion based on prosecutorial misconduct is denied.

//
//
//
//

## C. CONCLUSION AND ORDER

For the foregoing reasons, the Court DENIES Defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Court denies Defendant's motion without a hearing as "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982) (to justify a hearing, defendant must "make specific factual allegations which, if true, would entitle him to relief"). Defendant is denied a certificate of appealability on all claims, as he has not "made a substantial showing of the denial of a constitutional right." *See* 18 U.S.C. 2253(c)(2). The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.

Dated: May 25, 2018

Barry Ted Moskowitz, Chief Judge
United States District Court